United States District Court
District of Massachusetts

```
_____
                               )
MICHAEL J. RUGGIERI, as he is  )
ADMINISTRATOR IRONWORKERS      )
DISTRICT COUNCIL OF NEW ENGLAND)
FUNDS, IRONWORKERS DISTRICT    )   Civil Action No.
COUNCIL OF NEW ENGLAND HEALTH  )   11-cv-10444-NMG
AND WELFARE FUND, IRONWORKERS  )
DISTRICT COUNCIL OF NEW ENGLAND)
PENSION FUND, IRONWORKERS      )
DISTRICT COUNCIL OF NEW ENGLAND)
ANNUITY FUND, AND IRONWORKERS  )
DISTRICT COUNCIL OF NEW ENGLAND)
EDUCATION FUND,                )
        Plaintiffs,            )
                               )
        v.                     )
                               )
M.I.W. CORP. D/B/A MALATOS IRON)
WORKS,                         )
        Defendant,             )
                               )
        and                    )
                               )
EASTERN BANK,                  )
        Trustee.               )
_____)
```

**MEMORANDUM & ORDER**

**GORTON, J.**

This case arises from the refusal of defendant M.I.W. Corp. ("MIW") to comply with plaintiffs' requests to audit its payroll records. Pending before the Court is plaintiffs' motion for prejudgment attachment and temporary restraining order.

**I.   Background**

Plaintiffs attempted to schedule an audit of MIW's payroll

records for January 14, 2010, in accordance with the Delinquency Collection Procedure and Audit Procedure Agreement ("Delinquency Procedure Agreement") adopted as part of the collective bargaining agreement ("CBA") between the parties.  MIW refused to permit the audit on that date or to reschedule it for a later date.  On March 16, 2011, plaintiffs filed a Complaint in this Court seeking 1) a court order mandating that MIW make available its payroll records to allow plaintiffs to determine the amount of unpaid contributions owed for the period at issue, 2) an injunction to require MIW to permit plaintiffs to audit its payroll records, and 3) money damages in an amount to be determined after the audit.

On April 22, 2011, after plaintiffs filed the Complaint, MIW permitted Carl J. Hansen, III ("Hansen") to audit its payroll records, pursuant to the Delinquency Procedure Agreement.  Hansen uncovered as the result of his audit $67,856.41 in unpaid benefit contributions.  He added to that amount $32,537.20 in interest owed on the unpaid contributions and a $3,752.50 auditing fee, to arrive at a total sum owed of $104,146.11.  Given that plaintiffs were able to audit MIW's payroll records shortly after they filed the Complaint, the only remaining issue is whether plaintiffs are entitled to an award of monetary damages for the allegedly unpaid benefit contributions, as well as interest and fees associated with those contributions.

In the motion currently before the Court, plaintiffs seek (A) a temporary restraining order enjoining MIW from conveying or concealing its assets except in the ordinary course of business, and (B) prejudgment attachment of MIW's assets in the amount of $104,146.11.

## II. Legal Analysis

### A. Temporary Restraining Order

In deciding whether to grant a temporary restraining order, a district court must weigh 4 factors: (1) the likelihood of the movant's success on the merits; (2) the potential for irreparable harm to the movant if relief is not granted; (3) a balancing of equities; and (4) whether granting such relief is in the public interest. Largess v. Supreme Judicial Ct., 317 F. Supp. 2d 77, 80-81 (D. Mass. 2004). To demonstrate irreparable harm warranting a temporary restraining order, plaintiffs must show that they have no adequate remedy at law, i.e. that money damages alone will not adequately redress their injuries. Charlesbank Equity Fund II v. Blinds To Go, Inc., 370 F.3d 151, 162 (1st Cir. 2004).

Putting aside the plaintiffs' likelihood of success on the merits, which will be addressed more fully in Section II.B, infra, a temporary restraining order is not appropriate in this instance because plaintiffs have failed to demonstrate irreparable harm. It is apparent that money damages will adequately redress plaintiffs' alleged injuries and there is no

indication that MIW is near insolvency or likely to transfer its assets to avoid payment.  On the contrary, MIW has already made a good-faith payment of $10,000 in an attempt to resolve this matter through settlement, and has agreed to meet with fund administrators to set up a payment plan whereby MIW would reimburse plaintiffs for the agreed-upon arrearage.  For those reasons, this Court will not issue a temporary restraining order.

### B. Prejudgment Attachment

In order to obtain an order of pretrial attachment under Massachusetts law, plaintiff must demonstrate (1) reasonable likelihood of success on merits, and (2) reasonable likelihood of recovering judgment equal to or greater than amount of attachment sought that is over and above any liability insurance shown by defendant to be available to satisfy judgment. <u>Latorraca</u> v. <u>Centennial Technologies, Inc.</u>, 583 F. Supp. 2d 208, 211 (D. Mass. 2008).  In contrast to the foregoing TRO analysis, a plaintiff need not demonstrate irreparable harm to be eligible for prejudgment attachment and equitable considerations do not play a role in the inquiry.

Plaintiffs have demonstrated that they are likely to succeed on the merits of this case.  A clause appearing above the signature block at the bottom of each MIW Employee Weekly Payroll Report makes it clear that the signatory of the report accepts and adopts the CBA and agrees to be bound by it and all

agreements incorporated therein.  By signing these payroll reports every week, George Malatos, the president of MIW, acknowledged his company's continuing obligations under the CBA and the Delinquency Procedure Agreement.  Plaintiffs have conducted an audit pursuant to that procedure, informed MIW of the audit results and demanded payment of the outstanding sum.  MIW's failure to pay the amount due is a breach of the CBA.

Furthermore, plaintiffs have shown that they are reasonably likely to recover a judgment equal to or greater than the total amount claimed, i.e. $104,146.11.  Hansen's audit calculated that amount and attached payroll data to support his calculations.  While MIW challenges the figure, alleging that employees included in the audit worked substantially fewer hours than its own payroll records indicate, MIW fails to support its claim with data of any sort.  Given the actual evidence before it, this Court finds that plaintiffs are reasonably likely to recover a judgment equal to or greater than the amount claimed.

MIW submits that prejudgment attachment would create an undue hardship by tying up funds necessary to pay suppliers and meet its obligations under current contracts.  While the Court is cognizant of these hardships, it is clear that plaintiffs have met the criteria for prejudgment attachment and thus are entitled to it under Massachusetts law.

**ORDER**

In accordance with the foregoing, plaintiff's motion for prejudgment security and temporary restraining order (Docket No. 11) is, with respect to the motion for prejudgment security, **ALLOWED**; but is, with respect to the motion for temporary restraining order, **DENIED**.

**So ordered.**

                                                /s/ Nathaniel M. Gorton  
                                                Nathaniel M. Gorton  
                                                United States District Judge

Dated September 27, 2011